# Bard *v.* Bingham.

## *Appeal from Order denying Receiver.*

1. *Receiver ; appointment of, on bill for dissolution of partnership.*—In general a receiver will be appointed of course, upon the filing of a bill for the dissolution of a partnership, where it satisfactorily appears that complainant will be entitled to a decree of dissolution; but in all cases the appointment rests in the sound discretion of the court, in view of the particular facts presented.

2. *Same; when receiver is properly denied.*—In the present case, complainant, an insolvent partner, who had refused to consent to a dissolution, had been excluded from any participation and control in a partnership which carried on a political newspaper and a job printing office, which had been conducted at a loss. Under the articles, he was entitled to equal control, except as to the editorial department, which was to be under his immediate management. Prior to the formation of the partnership, the partner in possession had owned all the property and conducted the business, and complainant purchased a half interest in the property and business on long credit, mortgaging it back to secure the debt. Complainant did not aver or show that the partner in possession was insolvent, or that the property was endangered in his custody; nor did he aver or show any willingness, or ability, to make the payments as they fell due, or that his interest was equal to the amount due. Each partner charged the other with violation of the articles of partnership.

*Held :* The chancellor, on complainant's bill seeking a dissolution and settlement of the partnership, properly denied a receiver, pending the litigation.

APPEAL from Chancery Court of Montgomery.

Heard before Hon. H. AUSTILL.

This was an appeal by Samuel Bard, from an order denying a receiver over the material and business of the "Alabama State Journal" newspaper, pending a suit by Bard against Thos. C. Bingham, his copartner in the business, for

a dissolution of the partnership and for a settlement and dissolution of its affairs.

The bill alleges that on the 25th of July, 1875, Bingham sold a half interest in the paper to one John Bard for $7,500, payable as hereinafter stated, and entered into articles of copartnership with him; that John Bard, as was understood by the parties at the time, was not the purchaser in fact, but represented Samuel Bard, who was the real purchaser; that John Bard, by consent of all parties, afterwards withdrew, leaving Samuel owner of his interest in the concern and his rights under the partnership. By the agreement made on the 25th day of July, 1875, Bingham, who was then owner of the property, sold a half interest in the material, job office, &c., which constituted the "Alabama State Journal," for $7,500, payable in five equal annual installments—the first payable one year from date, with the privilege of extending it one year, all secured by a mortgage on the property sold. The proprietorship and management of the business of the newspaper, &c., to be in Bingham and John Bard jointly, but the "editorial management of the newspaper was to be exclusively under the management of Samuel Bard, subject only to the condition that the newspaper was to be politically a Union national republican newspaper, unless changed by unanimous consent of editor and proprietor." This agreement also provided that John Bard & Bingham should divide the losses and profits of the enterprise equally, requiring monthly statements of receipts, &c. After this agreement was entered into, John Bard and Bingham entered into an engagement with Samuel Bard to edit the paper for the term of five years upon the conditions above stated, and Bard then entered on his duties as such editor, &c.

The bill alleges that on the 15th of May, 1866, Bingham removed from its columns the name of Bard, as one of the owners of paper, without any justification, notifying the public that Bard was no longer connected with the paper, and excluded him from all editorial or other management of the affairs of the partnership, and has taken exclusive possession of all the partnership property, and carries on the paper in this manner, in violation of complainant's rights, for his own individual profit.

The bill, after averring that complainant has complied in all respects with his duties and engagements as editor and partner, states other violation of the partnership articles on the part of Bingham, (which need not be further noticed,) and alleges that the partnership has contracted several thousand dollars of debts, for which complainant is justly responsible with said Bingham.

[Bard v. Bingham.]

The bill prays a dissolution of the partnership, a settlement of its affairs, and "in the meantime that a receiver be appointed to take charge of the partnership property, &c., and to manage and control the Alabama State Journal and its business under the order of the court," &c.

Bingham, in his answer, averred that Bard had neglected his business and left the city for several months at a time, on two occasions, when others had to be employed to do his work; that he deceived him as to the patronage and business he could control for the paper, whereby respondent made the contract with him, and had utterly fallen short of his promises and statements in that regard, and set out at length alleged derelictions of duty on the part of said Bard; that both John and Samuel Bard were insolvent, have overdrawn their accounts with the partnership, and that upon a collection of all assets due the paper and business, and crediting one-half to Bard, and excluding the purchase money for the interest sold him, Bard would be about $2,500 in debt to respondent, but nevertheless, though requested to consent to a dissolution, refused. Respondent denied that he conducted the paper solely for his own profit since Bard's exclusion, and expresses a willingness to allow him to share in the profits, but avers that the paper and business, instead of earning profits, have been carried on at a loss, but that the debts incurred by the partnership, with the exception of a trifling amount, were due to respondent.

Affidavits and counter affidavits were filed on the hearing of the motion.

The chancellor denied the motion for the appointment of a receiver, but required Bingham to give a bond with sureties for $1,500, payable to complainant, "not to wilfully injure the good will of the paper, or remove or injure the material and property, and further conditioned to pay the complainant such sum as may be found to be due, upon decree to be hereafter made," and gave leave to Bard to renew the motion if the bond was not given within the time prescribed.

The refusal to appoint a receiver, is now assigned as error.

WATTS & SONS, and D. S. TROY, for appellant.

ELMORE & GUNTER, contra.

BRICKELL, C. J.—The contract of partnership, not committing the partnership effects to the exclusive possession of either of the partners, each partner has an equal right to the possession, and if wrongfully excluded, a court of equity will,

(30)

on a proper case being shown, intervene for his relief. The interference may be by compelling specific performance of the contract; or by injunction against a continuance of the exclusion; or by decreeing dissolution, if a case for dissolution is shown, and the appointment of a receiver pending the suit. The granting an injunction, arresting the one partner in his control and management of the partnership effects, or the appointment of a receiver, withdrawing the effects from the possession of all the partners, and taking them into the custody of the court, are stringent measures, not to be resorted to unless it appears they will operate entirely remedially, will promote the interests of the partnership as an entirety, and will not inflict injury, beyond what the character or the exigency of the case justifies.

The authorities affirm as a general rule, that where a bill is filed seeking a dissolution of a partnership, and it satisfactorily appears that the complainant will be entitled to a decree for dissolution, a receiver will be appointed of course. The reason being that the same causes which would justify a decree for dissolution generally justify the appointment of a receiver.—Kerr on Receivers, 82, (note 1). The appointment of a receiver, in all cases, rests in the sound discretion of the court, and in determining its propriety, the facts of each particular case are to be considered.—*Ex parte* Walker, 25 Ala. 81. In Slemmer's Appeal, 58 Penn. 168, the court decreeing a dissolution, directed the partnership assets to be transferred to that one of the partners who would pay or secure to be paid within a reasonable time the highest price for them,—SHARSWOOD, J., saying, "where a valuable business has grown up by the joint labors and contributions of all, the court should be careful to preserve it if possible, and to put all the parties upon a fair and equal footing in competing for it. To appoint a receiver, to direct a sale of the whole, and a winding up of the business, would destroy its value without benefitting either party."

The preservation of the subject of controversy for the benefit of the party ultimately decreed to have the right, is the object of committing it to the custody of a receiver. When it is apparent this purpose will not be accomplished, and the party in interest will be injured and not benefitted, a receiver ought not to be appointed. The business this partnership conducted was existing, in full operation, before the formation of the partnership. All the partnership property was the sole property of the appellee. Without the investment of capital, the appellant purchased an undivided half interest in the property, on long credit, mortgaging back to the appellee such interest to secure the payments. The

[Carleton v. Rivers et al.]

business is not shown to have been profitable, but it appears rather to have been unprofitable. The appellee sought a dissolution by consent, to which the appellant did not accede. The appellee is not averred to be insolvent, nor is it averred that the safety of the partnership property will be endangered in his custody. The ability and willingness of the appellant to make the payments for the half interest purchased, as they may severally fall due, is not averred; nor is it averred that such interest is equal in value to the payments. The appointment of a receiver to continue an unprofitable partnership business, and the withdrawal of the partnership property from the possession of a solvent partner, its safety not being endangered, and he having a lien on the interest of the complaining partner which will absorb it, would be a harsh measure, not beneficial to the partnership, or to either partner. It would burthen the property with the costs of a receivership, inflicting unnecessary injury. The chancellor properly refused, in the exercise of his judicial discretion, to make the appointment, and his decree is affirmed.