108 So.2d 687

**AMERICAN ARMED SERVICES UNDER- WRITERS, Inc., of Delaware, et al.,**

**v.**

**ATLAS INSURANCE COMPANY.**

**6 Div. 174.**

Supreme Court of Alabama.

Oct. 9, 1958.

Rehearing Denied Feb. 19, 1959.

**644**

Deramus, Fitts, Johnston & Mullins, Birmingham, for appellants.

Wm. S. Pritchard, Victor H. Smith and Pritchard, McCall & Jones, Birmingham, for appellee.

STAKELY, Justice.

This is an appeal under the provisions of § 758, Title 7, Code of 1940, from an order of the equity court appointing a receiver of the respondent (appellant here), American Armed Services Underwriters, Inc., a Delaware corporation. The order appointing the receiver was issued ex parte by the court upon a consideration of a bill of complaint filed by Atlas Insurance Company, an Alabama insurance corporation, and three supporting affidavits. The bill is sworn to. Made respondents to the bill of complaint are also John B. Cooney, William J. Kenney, Donald F. Wallace, BenJack Cage, American Armed Services Underwriters, Inc., of Nevada, a corporation, and Exchange Security Bank, a corporation. For the sake of convenience American Armed Services Underwriters, Inc., of Delaware, will be hereinafter referred to as "Delaware"; American Armed Services Underwriters, Inc., of Nevada, will be hereinafter referred to as "Nevada", and Atlas Insurance Company will be hereinafter referred to as "Atlas".

The only question presented by this appeal is whether or not the appointment of

a receiver of the property and assets of Delaware (appellant), without notice, was within the discretion of the trial judge.

The pertinent part of the bill of complaint will appear in the report of the case.

Under the allegations of the bill it appears that according to the management contract between Atlas and Delaware, Delaware was appointed by Atlas as its exclusive agent to manage its insurance business throughout the world. A copy of the contract is attached to the bill and marked Exhibit A and made a part thereof and will accordingly appear in the report of the case. This contract was made and entered into on the 1st day of May, 1956.

It further appears that Delaware is a Delaware Corporation, having its principal place of business in Alabama in the City of Birmingham, and that the respondents Cooney, Kenney and Wallace are officers of Delaware, over the age of twenty-one years and all residing in Birmingham, Alabama, but that BenJack Cage is a nonresident of the State of Alabama, a fugitive from justice and reportedly hiding in South America. It further appears that Nevada is a Nevada Corporation, having its principal place of business in Reno, Nevada.

It appears that Delaware was successful in the conduct of the business but that by mutual consent of the parties, it was decided to terminate the agency relationship, so that Atlas could appoint a different manager. The new agreement was made with Nevada and a copy of this contract is attached to the bill, marked Exhibit B and made a part thereof.

It further appears that the management contract between Atlas and Delaware was cancelled effective November 1, 1956, and that the correspondence between officers of Atlas, Delaware and Nevada shows that said management contract between Delaware and Atlas was cancelled and that there was to be an orderly transfer of the business conducted for Delaware over to Nevada; that on and after November 1, 1956, Nevada was the actual owner of the management contract with Atlas and that Delaware should have continued to serve after such date only as a submanager of Nevada until the business theretofore written and serviced by Delaware for Atlas could have been appropriately transferred to Nevada.

Under the allegations of the bill it appears that Delaware chose to ignore that its status was only that of an agent in the process of liquidating a management arrangement and not only withheld assets but also refused to make an accounting, which it was obligated to render to its principal Atlas. This appears to be the source of the difficulty between Delaware and Atlas.

■ It appears from the bill that all the business produced by Delaware is actually that of Atlas, for, whether or not the policies were written in the name of Atlas, the agent may not " 'Traffic with the subject-matter of his agency, without the consent of his principal, so as to reap the profit for himself.' Adams v. Sayre, 70 Ala. 318, 326." Lauderdale v. Peace Baptist Church, 246 Ala. 178, 181, 19 So.2d 538, 541.

In a case in which an agent failed to act in the utmost good faith with his principal this court said:

"An agent sustains a position of trust toward his principal and in all transactions affecting the subject of his agency, the law dictates that he must act in the utmost good faith and must make known to his principal each and all material facts within his knowledge which in any way affect the transactions and subject matter of his agency. * * *.

"The law sedulously regards this principle and acts of an agent which tend to violate this fiduciary obligation * * * are considered, in law, as 'frauds upon confidence bestowed.' 3 C.J.S., Agency, § 138a, page 7." My-

ers v. Ellison, 249 Ala. 367, 369, 31 So. 2d 353, 355.

In addition to allegations showing that Delaware failed to act in the utmost good faith, there are allegations that Delaware has refused to render reports as to the status of the business in accordance with the terms of the contract, has refused an accounting, and, further, has denied the officers of Atlas access to the records and papers of the business. These records and papers which Delaware has developed according to the allegations of the bill, are at the expense of and for the use of Atlas.

■ When the manager of a business refuses to allow the owner to see the books or to have an accounting and the owner alleges that the agents have misappropriated funds of the owner in an amount approximately equal to $250,000, which has resulted in an impairment of its capital structure, and a threat by the State Superintendent of Insurance to withdraw its license as a result thereof, it seems clear that such an emergency exists as would authorize the court to appoint a receiver pendente lite without notice.

We may add that in addition to the allegations of the bill, the sworn affidavits in support thereof substantiate the foregoing. It therefore appears that the appointment of the receiver to preserve the records for an accounting was an action taken by the court not only for the benefit of Atlas but also for policy holders.

■ We are quite aware of the general care which must be exercised by the court in a case of this kind. This court has said:

"* * * A receiver may be appointed without notice to the defendant who is to be dispossessed of his property or assets, but the cases in which notice may be dispensed with, are exceptional. * * * It must be shown that notice would jeopardize the delivery of the property over which

the receivership is to be extended. Moritz v. Miller, 87 Ala. 331 [6 So. 269]; Dollins v. Lindsey, 89 Ala. 217 [7 So. 234]." Henry v. Ide, 209 Ala. 367, 370, 96 So. 698, 701.

See also Lost Creek Coal & Mineral Land Co. v. Scheuer, 222 Ala. 400, 132 So. 615.

■ The practice and procedure for the appointment of receivers is set out in Chapter 34, Title 7, § 1156 et seq., Code of 1940. Ordinarily, it appears there, that when application for the appointment of a receiver is made, notice must be given to respondent a reasonable time before the hearing. However, upon a showing of good cause, a receiver may be appointed without notice. In this connection this court has said:

"It has been said that the exercise of the power to appoint a receiver *pendente lite* is one of the most responsible duties which a court of equity is called on to perform, as its effect is to deprive the defendant of his possession before a final decree, which may work great and even irreparable injury, though the property taken into the custody of the court may be finally restored. The appointment rests largely in the discretion of the court, not an arbitrary or capricious, but a judicial, discretion, controlled by a consideration of the circumstances of each case, and the power should be exercised with great caution and circumspection. Actual fraud or imminent danger, is not, in all cases, essential to the exercise of the power. There should, however, be a concurrence of two grounds,—a reasonable probability of success on the part of the complainant, and that the subject-matter in controversy is in danger. The remedy is preventive in its nature, and its purpose is the preservation of the subject-matter of litigation, for the benefit of all the parties in interest, until their rights can be finally adjudicated. It does not affect the

title, nor establish the rights of the parties. Such being the nature of the remedy, the appointment of a receiver is authorized, when the party seeking the appointment shows, *prima facie,* a title reasonably free from doubt, or a lien upon the subject-matter of the controversy to which he has a right to resort for the satisfaction of his claim, and that it is in danger of loss from waste, misconduct, or insolvency, if the defendant is permitted to retain the possession. Notice of the application for the appointment, and the officer to whom it will be submitted, must be given, or a good reason shown for the failure to give the same. Briarfield Iron Works Co. v. Foster, 54 Ala. 622; Micou v. Moses Bros., 72 Ala. 439; Bard v. Bingham, 54 Ala. 463; Ex parte Walker, 25 Ala. 81; Code 1886, § 3534.

"The allegations of the bill, which are verified, are not controverted. We must, therefore, on appeal, assume their truth." Ashurst v. Lehman, Durr & Co., 86 Ala. 370, 371, 5 So. 731.

In connection with an accounting, we also refer to the following:

"A just accounting in the case made by the bill and affidavit is dependent upon the books, papers, and other information in the exclusive possession of the appellants, and some of which have been withheld by Greenleaf from an accountant. [Here the principal's own books have been withheld from it, for appellant is nothing but a manager] * * * Without these difficulties being removed by taking possession of the affairs of the corporation, including its papers, books, and other sources of information, by a receiver pendente lite, the result of an accounting would be fruitless, or well-nigh impossible." Henry v. Ide, 209 Ala. 367, 96 So. 698, 702.

■ In the foregoing case it was also said in connection with the discretion of the trial judge:

"The appointment of a receiver rests in the sound discretion of the trial judge, subject to review for an abuse of that discretion. It is said that the exercise of this discretion will not be reversed, except in a clear case of abuse, nor when there is evidence which, when fairly considered, supports the judgment of the trial court. (Citing cases)." Henry v. Ide, 209 Ala. 367, 373, 96 So. 698, 704.

The appellant undertakes to point out certain defects in the bill but it appears that absolute accuracy is not a requisite, if there are substantial allegations that the danger to be averted is real and pressing. In an early case this court said:

"* * * we must look to the case made by the bill, and to that alone, for its statements and allegations must be taken as true on all questions of jurisdiction of the court in which it is filed. * * * Nor do we esteem it necessary to the exercise of these powers in the first instance, that the bill, which invokes the aid of a court of chancery, should be drawn with such technical accuracy as to defy a demurrer for every special cause relating to parties or form, in respect to which, if it were defective, the defect might be readily supplied by an amendment, which would be allowed as a matter of course. It is enough, if it be shown, by some person having an interest that the subject-matter is within the jurisdiction of the court, and that the danger and injury sought to be averted are real and pressing. So that, in passing on the question arising on this motion, it is not necessary for the court to decide upon the technical accuracy of the bill in all its details, but simply to inquire, whether, conceding the truth of the substantial

648

allegations of the bill, the court entertaining it had jurisdiction of the subject-matter and the parties." Ex parte Walker, 25 Ala. 81, 100–101.

The foregoing authority has been followed in subsequent cases and the above quotation was copied *in toto* in Ex parte Goodwyn, 227 Ala. 173, 178, 149 So. 216, 220, for the proposition that proceedings invoking the appointment of a receiver will not be examined with technical scrutiny if it appears that they were such "as are authorized in courts of equity, that they were instituted by a party who has an interest to be affected, that the subject-matter is within the jurisdiction of the court, and that the danger and injury sought to be averted are real and pressing."

█ It is urged that the decree appointing a receiver gives Atlas a license to investigate all the secrets of the operations of Delaware and to run rampant through all its records. It appears, however, that the trial court was careful to restrict the agents of Atlas to a perusal of only those books and papers which concerned the agency business.

█ It is also urged that a receiver should never be appointed where there exists any other safe and expedient remedy which would afford adequate protection to Delaware. It is insisted that a safe and expedient remedy is afforded by the statutes enacted with reference to the Department of Insurance of the State of Alabama. The statutes to which our attention is expressly called are the following statutes, which appear in the 1955 Cumulative Pocket Part to Title 28, relating to the Department of Insurance; § 47(4), § 47(9), § 47(14), and § 82, Title 28, Code of 1940, 1955 Cumulative Pocket Part.

█ We find that no where in these statutes does there appear to be any intention on the part of the legislature to displace the jurisdiction and duty of the courts which have been established as a resort for trusting principals against unfaithful agents. We are not willing to say that a court of

equity is not the place where the rights, if any, of Atlas could be declared and protected. Hence we find no merit in this contention.

Based on the record before us we see no reason why the relief prayed for should not have been granted and we conclude that the appointment of the receiver *pendente lite* should be affirmed.

Affirmed.

LIVINGSTON, C. J., and LAWSON and MERRILL, JJ., concur.