264 So.2d 510

**C. E. DEVELOPMENT COMPANY, Inc.,
a Corporation, et al.**

v.

**Robert W. KITCHENS et al.**

**6 Div. 975.**

Supreme Court of Alabama.

June 29, 1972.

McCollough, McCollough & Callahan, Birmingham, for appellants.

Norman K. Brown, Bessemer, for appellees.

MERRILL, Justice.

This is an appeal from an order of the Circuit Court of Jefferson County, appointing a receiver without a hearing, upon the presentation of a sworn bill of complaint. The appeal is authorized by Tit. 7, § 758, Code 1940.

The bill of complaint upon which the court acted in appointing the receiver was filed on April 6, 1972. The substance of the bill is as follows:

The appellees (complainants below and hereinafter referred to as Kitchens and Oliver) are Robert W. Kitchens and wife, Glenda A. Kitchens, and Leroy Oliver and wife, Martha R. Oliver, who sue in their behalf and as representatives of the class whose names, organizations, and identities are otherwise unknown, and being so numerous as to manifest inconvenience and oppressive delays to be all brought before the court.

The appellants are C. E. Development Company, Inc., (hereinafter referred to as C. E. D.), Essman Holding Company, Inc. (hereinafter referred to as the Holding Company) and C. A. Essman (hereinafter referred to as Essman), Lucia Essman (hereinafter referred to as Mrs. Essman), and Mary Charles Essman (hereinafter referred to as Miss Essman). Essman and Mrs. Essman are the sole stockholders, officers and directors of C. E. D., and they and their daughter, Miss Essman, are the sole stockholders, officers and directors of the Holding Company.

Kitchens employed C. E. D. to construct a dwelling house on certain lands owned by Kitchens, the cost of which was to be paid from the proceeds of an FHA loan in the amount of $17,550.00, financed through Collateral Investment Company. The dwelling was completed and the loan was closed on January 28, 1972, at which time Kitchens executed a mortgage in the amount aforesaid to Collateral Investment Company. Essman, as President of C. E. D., made an affidavit for the purpose of inducing the mortgage company to disburse the proceeds of the loan, and to pay C. E. D. its portion thereof, that all bills for labor and material used in the construction of said dwelling had been paid in full, which affidavit was false and untrue, in that there remained outstanding and unpaid bills for labor and materials due Alpha Lumber Company, Inc., a corporation, and a verified statement of mechanic's lien in the amount of $1,768.00 was filed by said Company therefor, in the Probate Office of Jefferson County, Alabama, Bessemer Division, and a similar statement was filed by Parker Supply Company, Inc., in said Probate Office, for labor and materials used in the construction of said dwelling, in the amount of $922.13.

The Olivers also employed C. E. D. to construct a dwelling house for them, the cost of which was to be paid from the proceeds of a loan in the amount of $20,700.00, from Collateral Investment Company; that upon the closing of such loan on, to wit, December 9, 1971, Essman made an affidavit for the purpose of inducing the mortgage company to pay unto him his portion of the proceeds of the loan, that all bills for labor and materials used in the construction of said dwelling had been paid in full, which statement was false and un-

true in that since the closing of the loan, verified statements of mechanic's liens by Alpha Lumber Company, Inc., Parker Supply Company, Inc. and Belcher Evans Millworks, Inc., copies of which are attached as Exhibits G, H and I to the bill, were filed for record in the Probate Office of Jefferson County.

That C. E. D., acting by and through its President, procured construction loans from Collateral Mortgage Company, for the purpose of constructing dwelling houses on several parcels of land; that said loans were secured by mortgages on these parcels of land upon which said houses were to be constructed; that C. E. D. did not construct said houses, and Collateral Mortgage Company proceeded to foreclose the mortgages on said parcels of land. The foreclosure deeds were executed on March 30, 1972, and copies thereof are attached to the bill as Exhibits J through N, both inclusive.

Essman and wife, Mrs. Essman, through a series of conveyances, (copies of which are marked Exhibits O through BB to the bill of complaint) conveyed numerous parcels of real estate, the titles to which were held by them individually, to the Holding Company. Such conveyances were fraudulent as to all creditors of C. E. D., and the Essmans, and the said Holding Company constitutes a mere sham as to such creditors.

That C. E. D. has received portions of the proceeds of numerous other loans upon the basis of similar affidavits of Essman which were false and untrue, in that numerous bills and claims for materials used in the construction of the dwellings upon the various parcels of property covered by said loans had not been paid.

That C. E. D. was insolvent at the time this bill was filed and prior thereto, and any assets held by C. E. D. were subject to a Federal Income Tax lien, a copy of which is attached to the bill as Exhibit DD.

That the individual respondents fraudulently conspired to obtain portions of the proceeds of numerous loans by Essman's making false and fraudulent affidavits to induce the payment of such proceeds to C. E. D., all of which was done with the knowledge that the materialmen had not been paid and that they would file statements of liens upon the real estate where said materials were used for the construction of dwellings thereon; that the money so fraudulently obtained has been fraudulently concealed and disposed of by said individual respondents, and said corporate respondents have been used in the fraudulent scheme of procuring, disposing and concealing the same. The individual respondents have further fraudulently conspired by using said corporate respondents as a means to escape their personal and legal liabilities to the complainants and other creditors, and said corporate respondents are but a sham or device to hold the legal title to said real estate conveyed to them by the said Essman and wife, Mrs. Essman, to prevent the collection of the just debts and obligations due the complainants and other creditors of said corporate and individual respondents.

Complainants, upon information and belief, state that the individual respondents, or one or more of them, own an expensive and valuable parcel of real estate near Panama City, Florida, and that such property at the time the bill was filed, was about to be sold, and the proceeds thereof converted into cash, and concealed and hidden from the complainants and other creditors of respondents.

That the respondent corporations are in truth and fact identical to the respondent Essmans and that both corporate setups and both corporate structures are but shams and subterfuges for the Essmans to evade and avoid their legal debts, duties and responsibilities and that separate corporate existence should not be recognized because said purported corporations are so organized and controlled and their business conducted in such a manner as to make them merely instrumentalities of the Essmans, and that under such circumstances the fic-

tion of separate corporate entity should not be prosecuted or allowed to permit the corporate respondents to evade their just responsibilities and masquerade through the Essmans who are the officers, directors, stockholders and agents of said corporations, and through said masquerade device, both the corporate respondents, as well as the Essmans, are attempting to defeat the payment of their just obligations.

That due to the fraudulent acts of respondents, the fraudulent transfers and conveyances of real estate, the fraudulent disposition and concealment of assets and funds fraudulently obtained, irreparable damage and harm to complainants (which includes the claims of liens filed upon their respective property) have resulted, which irreparable damage and harm will continue unless a receiver is appointed for said respondents; that it is urgent and necessary for the protection of the complainants and other creditors that all assets of the respondents be frozen, transfers of assets be prohibited, bank accounts frozen and taken over, and all assets collected and administered to the end that the same shall be used for the benefit of complainants and other creditors, including the determination of the priority of claims thereto.

The complainants, and each of them, offer to do equity, they have no adequate remedy at law, and that a receivership is necessary and proper in order to prevent a multiplicity of suits and that irreparable harm and irreparable damage will result in the absence of such receivership.

The prayer is for service of process, that an order be entered restraining the respondents from withdrawing funds from bank accounts, and disposing of assets, that a receiver be appointed forthwith, and that such receiver be authorized to take over the assets and businesses of the respondents, all in accordance with the law provided in such cases, that upon the final hearing of the cause, the receiver be authorized to make distribution to the creditors as fixed and determined by the court;

that all fraudulent conveyances by respondents be set aside, both as to real and personal property, and a prayer for general relief to which the complainants may be entitled in the premises. The bill was sworn to by complainants, as required by law.

After the appeal, appellees asked for an order setting a date for submission, and among the grounds stated that since the appointment of the receiver, Essman had been indicted by the Grand Jury of the Bessemer Division of Jefferson County in five cases for obtaining money from appellees and others under false pretense, and for perjury in connection with transactions with appellees and others; that in addition to the ten suits against C. E. D. and Essman, wherein liens were asserted on the property owned by appellees and others of the same class listed in the transcript, other suits had been filed since the filing of the transcript and more could reasonably be expected to be filed; that the amount of the liens already exceeds $22,000.00, which exceeds the amount of bonds given by appellants, and that appellants are now receiving more than $5,000.00 per month on the property owned or held by the Holding Company or the individual appellants. On May 17, 1972, this court set dates for the filing of briefs and, in the event oral argument was requested, the cause would be set for oral argument during the week of June 12, 1972. The cause was argued and submitted on June 14.

We quote from appellants' brief:

"Appellants' position is that the bill of complaint lacks sufficient averments to invoke the jurisdiction of the Court to appoint a Receiver over the property and assets of Appellants and that in doing so without notice to Appellants of the application therefor, the trial court clearly abused its discretion, if any it had."

The basic question presented to us by the argued assignments of error is whether the court erred in appointing the receiver. We list some principles governing such an appointment.

■ A receivership is an ancillary remedy in aid of the primary object of the litigation, and to sustain a bill for a receiver there must be some distinct right to be protected, and some other relief sought to which a receivership is an aid. Grand Lodge, K. P. v. Shorter, 219 Ala. 293, 122 So. 36.

■ The appointment of receivers is part of the jurisdiction inherent in courts of equity, based on the inadequacy of the remedies of law, intended to prevent injury, waste, or destruction of the property in controversy, and to preserve it pendente lite for the benefit of all parties, to be finally disposed of as the court may direct. Ex parte Goodwyn, 227 Ala. 173, 149 So. 216.

The bill in the instant case is a creditor's bill and seeks to discover assets, to set aside fraudulent conveyances, to prevent a multiplicity of suits and to remove the liens upon the property of the named complainants, and creditors of the same class.

Title 7, § 897, Code 1940, provides:

"A creditor without a lien may file a bill in equity to discover, or to subject to the payment of his debt, any property which has been fraudulently transferred or conveyed, or attempted to be fraudulently transferred or conveyed by his debtor."

Title 7, § 898 provides, in part, that a creditor without a lien or judgment may file a bill for discovery of assets against a debtor in the debtor's county; and this discovery includes others than the debtor. Davenport & Harris Funeral Homes v. Kennedy, 243 Ala. 613, 11 So.2d 379.

In Smith v. Wilder, 270 Ala. 637, 120 So. 2d 871, this court said:

"The rule is settled that different grantees of the same debtor, though they claim and hold under different conveyances affecting different property, may be joined in the same bill with the debtor, to cancel such conveyances and subject the property to the satisfaction of the debts owed by the debtor. Green v. First National Bank of Jacksonville, 224 Ala. 47, 138 So. 550, and cases cited.

"It is also well settled that any number of creditors, whether judgment or simple contract creditors, and whether with or without liens, may join as complainants in a bill to set aside alleged fraudulent conveyances. (Citations omitted)

\* \* \* \* \* \*

"An allegation that the conveyance of the property was voluntary and without consideration is sufficient averment by an existing creditor to vacate, without regard to any other circumstance. (Citations omitted)."

■ Fraud is the basic fact that gives jurisdiction to the equity court. Myers v. Redmill, 266 Ala. 270, 96 So.2d 450, 73 A.L.R.2d 746; Johnson Dry Goods Co. v. Drake, 219 Ala. 140, 121 So. 402.

The bill shows that the conveyances by Essman and wife were made to the Holding Company for an inadequate consideration and with intent to hinder, delay and defraud the creditors of C. E. D. and the Essmans, who owned C. E. D. and were its only officers, because they left no assets in C. E. D. According to the allegations of the bill the creation of the Holding Company by the Essmans was merely a vehicle, device and subterfuge in the fraudulent scheme to prevent their creditors from collecting the obligations due them by C. E. D. and the individual respondents.

In Forest Hill Corporation v. Latter & Blum, 249 Ala. 23, 29 So.2d 298, this court said:

"The notion of separate corporate existence will not be recognized where a corporation is so organized and controlled and its business conducted in such a manner as to make it merely an instrumentality of another, and in such circumstances the fiction may not be prosecuted to permit the corporation to evade its just re-

sponsibilities. The fiction was introduced into the law for certain well-known purposes, but it was not invented to promote injustice or justify wrongs and when so used it should be disregarded. The courts will not allow the corporate entity to successfully masquerade through its officers, stockholders, representatives or associates so as to defeat the payment of its just obligations. Jefferson County Burial Soc. v. Cotton [222 Ala. 578, 133 So. 256] supra; Birmingham Realty Co. v. Crossett, 210 Ala. 650, 98 So. 895; Dixie Coal Min. & Mfg. Co. v. Williams, 221 Ala. 331, 128 So. 799.

"Actual fraud is not necessarily a predicate for discarding the theory. The courts will not apply the doctrine when to do so would extend the principle beyond its legitimate purposes and produce injustices or inequitable consequences. 13 Am.Jur. 160, § 7; 18 C.J.S. Corporations § 6, p. 376; 14 C.J. 59, § 20.

"As a corollary principle and determinative of the question before us, one, as the appellant, could not avoid its responsibility for its obligation to its brokers by the apparent manipulations of its president and his associates in routing the title through Oman to the Louisiana namesake."

■ A court of equity will look through form to substance and will declare a corporate setup a sham and a subterfuge where substantially all of its stockholders organized it for a personal purpose, subversive of the rights of others. Morgan Plan Co. v. Vellianitis, 270 Ala. 102, 116 So.2d 600.

■ The conveyances from Essman and wife to the Holding Company are made exhibits to the bill. Many show a consideration of $5.00 and a few show a consideration of $500.00 and the assumption of mortgages which they had executed and delivered to the respective mortgage companies.

The bill charges that a fraudulent scheme existed and operated whereby the respondents obtained portions of the proceeds of the loans procured by complainants, which loans were secured by mortgages on complainants' real estate, by giving false and fraudulent affidavits which resulted in statements of lien claims being placed against complainants' property. Under the authorities last cited, this fraudulent scheme went right on through C. E. D., Essman, his wife, his daughter and the Holding Company.

Appellants argue that the court erred in appointing the receiver without notice. This was done in American Armed Services Underwriters, Inc. v. Atlas Insurance Co., 268 Ala. 637, 108 So.2d 687, where the court said:

"The practice and procedure for the appointment of receivers is set out in Chapter 34, Title 7, § 1156 et seq., Code of 1940. Ordinarily, it appears there, that when application for the appointment of a receiver is made, notice must be given to respondent a reasonable time before the hearing. However, upon a showing of good cause, a receiver may be appointed without notice. In this connection this court has said:

"'It has been said that the exercise of the power to appoint a receiver *pendente lite* is one of the most responsible duties which a court of equity is called on to perform, as its effect is to deprive the defendant of his possession before a final decree, which may work great and even irreparable injury, though the property taken into the custody of the court may be finally restored. The appointment rests largely in the discretion of the court, not an arbitrary or capricious, but a judicial, discretion, controlled by a consideration of the circumstances of each case, and the power should be exercised with great caution and circumspection. Actual fraud or imminent danger, is not, in all cases, essential to the exercise of the power. There should, however, be a concurrence of two grounds,—a reasonable probability of success on the part of the complainant, and that the subject-matter in controversy is in danger. The remedy

is preventive in its nature, and its purpose is the preservation of the subject-matter of litigation, for the benefit of all the parties in interest, until their rights can be finally adjudicated. It does not affect the title, nor establish the rights of the parties. Such being the nature of the remedy, the appointment of a receiver is authorized, when the party seeking the appointment shows, *prima facie*, a title reasonably free from doubt, or a lien upon the subject-matter of the controversy to which he has a right to resort for the satisfaction of his claim, and that it is in danger of loss from waste, misconduct, or insolvency, if the defendant is permitted to retain the possession. Notice of the application for the appointment, and the officer to whom it will be submitted, must be given, or a good reason shown for the failure to give the same. Briarfield Iron Works Co. v. Foster, 54 Ala. 622; Micou v. Moses Bros., 72 Ala. 439; Bard v. Bingham, 54 Ala. 463; Ex parte Walker, 25 Ala. 81; Code 1886, § 3534.

" 'The allegations of the bill, which are verified, are not controverted. We must, therefore, on appeal, assume their truth.' Ashurst v. Lehman, Durr & Co., 86 Ala. 370, 371, 5 So. 731.

\*     \*     \*     \*     \*     \*

" 'The appointment of a receiver rests in the sound discretion of the trial judge, subject to review for an abuse of that discretion. It is said that the exercise of this discretion will not be reversed, except in a clear case of abuse, nor when there is evidence which, when fairly considered, supports the judgment of the trial court. (Citing cases).' Henry v. Ide, 209 Ala. 367, 373, 96 So. 698, 704."

Appellants contend that some of the allegations of the bill are vague, indefinite, uncertain or are conclusions of the pleader. In the last cited case, this court stated: "The appellant undertakes to point out certain defects in the bill but it appears that absolute accuracy is not a requisite if there are substantial allegations that the danger to be averted is real and pressing." After quoting from an earlier case so holding, the court wrote:

"The foregoing authority has been followed in subsequent cases and the above quotation was copied *in toto* in Ex parte Goodwyn, 227 Ala. 173, 178, 149 So. 216, 220, for the proposition that proceedings invoking the appointment of a receiver will not be examined with technical scrutiny if it appears that they were such 'as are authorized in courts of equity, that they were instituted by a party who has an interest to be affected, that the subject-matter is within the jurisdiction of the court, and that the danger and injury sought to be averted are real and pressing.' "

It was alleged that the fraudulent scheme was in operation at the time this bill was filed; that conveyances had been made to hinder, delay and defraud the creditors; that a sale of a valuable parcel of real estate in Florida was eminent, and that the proceeds derived therefrom would be fraudulently disposed of or concealed from the creditors; that numerous other creditors had been victimized by the same fraudulent scheme, notice to the appellants of the application for the appointment of a receiver would have accelerated the appellants' activities in fraudulently disposing of and concealing assets from the creditors, thereby causing greater irreparable damage and harm to the creditors. The urgency and need for the immediate appointment of a receiver is clearly sustained by the facts alleged in the bill.

Appellants argue that the appellees had no right to file their bill because the debts were not due and the action was premature. Cited in brief in support of this claim are an 1890 case and a 1912 case, and cited in oral argument an 1888 and an 1889 case. We do not consider them to be apt authority today.

One aspect of the bill in the instant case was to set aside fraudulent conveyances.

Prior to our decision in Myers v. Redmill, 266 Ala. 270, 96 So.2d 450, 73 A.L.R.2d 746, in 1957 it was necessary to reduce a claim to judgment before filing a bill to set aside an alleged fraudulent conveyance. But the rule was changed in *Redmill* and later, when *Redmill* was summarized in Roddam v. Martin, 285 Ala. 619, 235 So.2d 654, this court said, in part:

"2. It is not the judgment which creates the relation of 'creditor' under the statute, but the wrong which produces the injury and gives rise to the damages which are recovered. Hence, the date of the wrongful act, and not the filing of the suit or the recovery of the judgment, fixes the status and rights of the parties.

"3. Our present statute, Tit. 20, § 7, does not require the debt, claim or demand, which is protected by the statute, to be reduced to judgment before the bill to set aside a conveyance as fraudulent is filed. The action at law to reduce to judgment, and the bill to set aside are concurrent remedies in point of time, though the latter is, in fact, merely in aid of the action at law; that is, to give the plaintiff the fruits of his judgment when recovered."

Finally, appellants argue that the verification is defective. The verification appears to have been copied from the one held to be sufficient in Lambert v. Anderson, 227 Ala. 222, 149 So. 98. Again, we hold it to be sufficient, but also note that this court has approved a model verification in an opinion by Coleman, J., in Boyett's Inc. v. Gross, 276 Ala. 452, 163 So.2d 610[15]. This model is definite, clear and comprehensive, especially in cases where, as here, some allegations are made as facts, but many must be made on information and belief.

The two affidavits made by Essman as President of C. E. D., as owner and contractor to induce the Kitchens in one and the Olivers in the other "to complete the purchase of said property and pay over the cash payment therefor to or for the benefit of the owner; also to induce *Collateral Investment Company* to make a loan in the amount of $17,550.00 (Oliver, $20,700.00), secured by a mortgage on said property and disburse the proceeds thereof; and also to induce American Title Insurance Company to issue its title insurance policy to said mortgagee covering said mortgage"; stated that "All bills for labor and material paid in full" in the blanks for the listing of unpaid bills by the owner; and the contractor's part of the binder, also sworn to by Essman, contained this statement:

"The undersigned contractor hereby certifies that there have been paid to him in full all amounts owed on the aforesaid construction contract, that he has paid in full all bills for labor and materials, that there are no outstanding claims or disputes as to such bills, that said repairs and improvements have now been completed, and waiver is hereby made of any and all liens and claims that the undersigned has in connection with said repairs and improvements."

Eight other similar affidavits on eight other dwellings are made exhibits to the record and these are followed by some thirty-four exhibits of sworn claims of mechanic's and materialmen's liens on these properties which had not been paid.

We are inclined to agree with the comment of Stone, C. J., in Thompson v. Tower Manufacturing Company, 87 Ala. 733, 6 So. 928, that "The averments of the bill, if made good, show a flagitious case of fraud."

We affirm the action of the trial court in appointing the receiver and, upon receipt of this opinion, the trial court should inform the receiver to proceed with his duties as such. In the event an application for rehearing is filed by appellants, this opinion will not be withdrawn and the certificate will not be recalled pending a decision on the application for rehearing. The opinion will be withdrawn and the certificate re-

called only if an application for rehearing is granted.

Affirmed.

HEFLIN, C. J., and COLEMAN, HARWOOD, BLOODWORTH, MADDOX and McCALL, JJ., concur.