631 F.2d 31
 The FIRST NATIONAL BANK OF BIRMINGHAM et al., Plaintiffs-Appellees,
v.
PERFECTION BEDDING CO., etc., Defendant-Appellee.
Fred M. JACKSON, III, et al., Defendants,
Mrs. R. L. Ezelle, Sr. and Mrs. George B. (Annie Mossiss
Ezelle) Pickett, etc., et al., Plaintiffs-Appellants,
v.
NATIONAL MATTRESS CO., etc., Defendant-Appellee.
 No. 80-7111
 
 Summary Calendar.
 United States Court of Appeals,
Fifth Circuit.
 Unit B
 Nov. 17, 1980.
 Watkins, Pyle, Ludlam & Stennis, L. Arnold Pyle, Jackson, Miss., Johnson, North, Haskell & Slaghter, James L. North, Birmingham, Ala., for appellants.
 Cabaniss, Johnston, Gardner, Dumas & O'Neal, David B. Anderson, L. Vastine Stabler, Jr., Meade Frierson, III, Birmingham, Ala., for First National Bk. of Birmingham.
 Bradley, Arant, Rose & White, Birmingham, Ala., Thad G. Long, Robert E. Emerson, Huntington, W. Va., for National Mattress Co., and Perfection Bedding Co.
 Appeal from the United States District Court for the Northern District of Alabama.
 Before RONEY, FRANK M. JOHNSON, Jr. and HENDERSON, Circuit Judges.
 FRANK M. JOHNSON, Jr., Circuit Judge:
 
 
 1
 In 1976, Perfection Bedding Company (Perfection), an Alabama corporation, was in serious financial straits with an unaudited net worth of approximately $704.04. In June, 1976, its president, Fred M. Jackson, received an offer for Perfection's stock from National Mattress Company (National), a West Virginia corporation. Perfection's stock was eventually sold to National for $162,000 and was transferred by a Stock Purchase Agreement (Agreement) on August 9, 1976.
 
 
 2
 Perfection had an employee pension fund that was terminated in May, 1976, prior to the negotiations between National and Perfection. The pension fund contained $611,193.90 in excess assets over its obligations which prompted the pension fund's trustee, First National Bank of Birmingham, to bring an interpleader action to determine the ownership of the excess assets.[1] Named as defendants were Perfection, the former stockholders of Perfection (former stockholders), the employee-participants under the fund, and the Pension Benefit Guaranty Corporation.[2] The former stockholders brought a declaratory action against National seeking either a rescission of the Agreement or a declaration that the excess assets of the pension fund vested in the former stockholders when the fund terminated.[3] These actions were consolidated.
 
 
 3
 By summary judgment, the United States District Court for the Northern District of Alabama awarded 33.53% of the excess assets to the employee-participants and the remaining 66.47% to Perfection (actually to National, as Perfection's sole stockholder). Judgment on both actions was entered December 13, 1979; the district court's order expressly stated that the excess funds would be distributed at the expiration of the 30-day appeal period. Because the former stockholders did not file a supersedeas bond, the excess funds had already been distributed to Perfection by the time the appeal was filed.
 
 
 4
 On appeal, the former stockholders contend that the district court erred in concluding (a) that the former stockholders and National were not mutually mistaken about the transfer of the excess assets and (b) that the former stockholders were not entitled to a constructive trust of those assets under a theory of unjust enrichment. Further, they argue that the district court's order regarding the disbursement of the assets was not final and that the ex parte nature of the order violated both the Federal Rules of Civil Procedure, Rules 5(a) and 7(b), and 28 U.S.C. § 2042.[4] We affirm.
 
 
 5
 Since the parties both agree that no material facts are disputed, our review focuses on whether appellees are entitled to judgment as a matter of law. Bank of Commerce of Laredo v. City National Bank of Laredo, 484 F.2d 284, 289 (5th Cir. 1973), cert. denied, 416 U.S. 905, 94 S.Ct. 1609, 40 L.Ed.2d 109. In Alabama, stockholders are the equitable owners of a corporation's assets and they can transfer that equitable ownership through sale of their stock. Tomaras v. Papadeas, 358 So.2d 428, 430 (Ala.1978); First Alabama Bancshares, Inc. v. McGahey, 355 So.2d 681 (Ala.1978). It is also clear that under Alabama law stockholders have no vested rights in a corporation's assets or profits until a distribution occurs. Jones Valley Finance Co. v. Tennille, 40 Ala.App. 284, 115 So.2d 495, 498, cert. denied, 270 Ala. 738, 115 So.2d 504 (1959). Such a distribution did not occur here. Thus the former stockholders' mistaken belief that the excess assets of the pension fund vested in them when the pension fund was terminated was a mistake of law, not fact.
 
 
 6
 It is well established in Alabama that equity will not grant relief for a mistake of law. Western Grain Company Cases, 85 So.2d 395 (Ala.1955); Hinson et al. v. Byrd et al., 259 Ala. 459, 66 So.2d 736, 739 (1953). However, the courts have allowed exceptions to this rule in cases when the injured party can demonstrate that either mutual mistake, fraud or misrepresentation caused the injury. See, e. g., C. E. Development Company v. Kitchens, 288 Ala. 660, 264 So.2d 510 (1972); American Liberty Insurance Co. of Birmingham v. Leonard, 270 Ala. 17, 115 So.2d 470 (1959); Southern Ry. Co. v. Birmingham Rail & Locomotive Co., 210 Ala. 540, 98 So. 727 (1924).
 
 
 7
 The former stockholders argue that a mutual mistake occurred with respect to the excess assets. The first part of their argument is that, while they were aware of the excess assets, they were mistaken in believing that the assets did not pass to National as an incident of the sale of the stock. Secondly, they contend that since National was unaware that this additional corporate asset existed and that the sale of Perfection's stock transferred the excess assets, National was similarly mistaken. Appellants' mutual mistake argument cannot stand given the factual circumstances of this case.
 
 
 8
 National had originally offered $250,000 with a floating price clause that would allow an up or down price adjustment based on an audit; if the audit revealed a price decrease of $100,000 or more, this original offer allowed an escape clause for the stockholders. There has been no showing that National misunderstood the legal implications of a stock transfer, namely, that in its stock purchase National was assuming both the assets and liabilities of Perfection.[5] Moreover, the record is devoid of any suggestion of fraud or misrepresentation on the part of National.
 
 
 9
 We are unable to grant relief to the former stockholders because the record clearly shows a unilateral mistake of law, without any showing of mistake or wrongdoing by National. See Johnson v. Boggan, 325 So.2d 178 (Ala.1975); Ex parte Perusini Construction Co., 242 Ala. 632, 7 So.2d 576 (1942). Consequently, the district court was correct in finding that the former stockholders were not entitled to the excess assets or to a constructive trust for the value of those excess assets. See Int'l U. of Operating Engineers v. Central N. L. Insurance Co., 501 F.2d 902, 906 (10th Cir. 1974).
 
 
 10
 Moreover, the former stockholders contend that the distribution of the excess assets violated both 28 U.S.C. § 2042 and the Federal Rules of Civil Procedure. We find this contention wholly without merit given the district court's express order regarding disbursement.[6] Our review of the records reveals that the disbursement of the excess funds was proper and was "by order of the court" within the meaning of 28 U.S.C. § 2042. The order itself served as adequate notice to the former stockholders that the excess assets would be disbursed so that there was no violation of Section 2042 or of Rules 5 and 7 of the Federal Rules of Civil Procedure. Accordingly, the judgments of the district court are
 
 
 11
 AFFIRMED.
 
 
 
 [1]
 Jurisdiction was based on the Federal Interpleader Act, 28 U.S.C. §§ 1331, 1335 (1976) and Employee Retirement Income Security Program (ERISA), 29 U.S.C. § 1001 et seq. (1976)
 
 
 [2]
 The employee-participants were awarded 33.53% of the excess assets and they are not a party to this appeal. National was not joined as a defendant in the interpleader action as the former stockholders' motion to this effect was not granted
 
 
 [3]
 In this action jurisdiction was based on diversity, 28 U.S.C. § 1332 (1976) and declaratory judgments, 28 U.S.C. § 2201 (1976)
 
 
 [4]
 28 U.S.C. § 2042 provides:
 Withdrawal
 No money deposited shall be withdrawn except by order of court. In every case in which the right to withdraw money deposited in court has been adjudicated or is not in dispute and such money has remained so deposited for at least five years unclaimed by the person entitled thereto, such court shall cause such money to be deposited in the Treasury in the name and to the credit of the United States. Any claimant entitled to any such money may, on petition to the court and upon notice to the United States attorney and full proof of the right thereto, obtain an order directing payment to him.
 
 
 [5]
 We agree with the district court that the former stockholders had reason to fear that an audit could reveal further depreciation and even catastrophe. We are unconvinced that by accepting the fixed price of $162,000 the former stockholders intended only to pass on undisclosed liabilities but not undisclosed assets. Furthermore, National offered more than adequate consideration for Perfection's stock given the offers made and its post-Agreement loan of $2,000,000 to Perfection
 
 
 [6]
 In its order entitled "Final Order Granting Summary Judgment," the district court on December 13, 1979,
 FURTHER ORDERED that the Clerk of the Court release these funds in compliance with the terms of this order upon expiration of the appeal period which will expire under Rule 4 of the Federal Rules of Appellate Procedure 30 days from the date of this order.