This is an appeal from a summary judgment in favor of the defendant, Cumis Insurance Society, Inc.
The issue is whether the insurance policy issued to the plaintiff's employer covered attorney fees incurred by the plaintiff.
The plaintiff, Phillip Eugene Gardner, was employed as a collections officer for the Anniston Ordnance Depot Federal Credit Union (hereinafter "AOD Credit Union") from 1981 to 1984. Gardner collected money owed on past-due accounts, repossessed automobiles and mobile homes, and displayed the repossessed automobiles and mobile homes for sale.
On July 31, 1987, Gardner was indicted for violating18 U.S.C. § 371 and 1006 (1948), involving conspiracy and defrauding a federal credit union, respectively. The indictment charged that Gardner, while he was an employee of the credit union, received money, or "kickbacks," on loans obtained from the credit union. Specifically, the prosecution alleged that a customer would come to the credit union to view repossessed mobile homes, Gardner would "steer" the customer to Beck's Mobile Homes. If the customer then purchased a mobile home from Beck's and financed it through the AOD Credit Union, Gardner received a monetary kickback from his immediate supervisor, who was also involved in the kickback scheme. Gardner was tried and acquitted of the criminal charges against him on October 7, 1987.
On December 9, 1987, Gardner's attorney requested information from the AOD Credit Union concerning any policies that would provide coverage for attorney fees and court costs for officers of the credit union. On December 30, 1987, Gardner made a claim for attorney fees to Cumis Insurance Society, which had issued a policy to the AOD Credit Union. Cumis denied coverage. Gardner filed a declaratory judgment action on October 27, 1988. Cumis filed a motion to dismiss, which was subsequently denied. Cumis then filed a motion for summary judgment on June 20, 1990. After a hearing, the trial court entered a summary judgment on July 13, 1990. The trial court stated that "the activities of [Gardner] were excluded from the coverage of the Cumis Insurance Society, Inc. policy." We agree with the trial court; therefore, we affirm.
The insurance policy provided in pertinent part as follows:
"1. Insuring Clause
 "This Policy shall, subject to its terms, conditions and limitations as hereinafter provided, pay on behalf of each and every person who was or now is or may hereafter be a Director or Officer of the Credit Union who is included in the meaning of those terms as defined in Clause 2(a) of this Policy (who are hereinafter individually or collectively sometimes called the 'Insureds') loss (as hereinafter defined) arising from any claim or claims which are first made against the Insureds, jointly or severally, during the policy period by reason on any Wrongful Act (as hereinafter defined) in their respective capacities as Directors or Officers, or, if the Credit Union is obligated to pay such loss by way of indemnification, under law, its charter bylaws, to pay such loss on behalf of the Credit Union, but the Society shall not be liable to make payment on behalf of both the Insureds and the Credit Union for the same loss.
". . . .
"4. Exclusions
". . . .
 "(b) Based upon or attributable to an insured gaining in fact a personal profit or advantage to which they were not legally entitled."
Absent public policy considerations that dictate a contrary result, courts *Page 1096 
will not, in order to create a new contract for the parties, ignore express provisions of a policy, including exclusionary clauses or terms limiting the insurance company's liability.Johnson v. Allstate Ins. Co., 505 So.2d 362 (Ala. 1987). Where there is no ambiguity in the terms of an insurance contract as written, express provisions of the policy, including any exclusions, cannot be defeated by making a new contract for the parties. Upton v. Mississippi Valley Title Ins. Co.,469 So.2d 548 (Ala. 1985). Although insurance policies containing ambiguities are to be construed in favor of the insured, it is imperative that courts enforce unambiguous policies as written.Best v. Auto-Owners Ins. Co., 540 So.2d 1381 (Ala. 1989).
In applying these standards to the case at bar, we find the policy and the exclusions to be unambiguous. The exclusion clause in the policy clearly prohibits Cumis from paying Gardner's attorney fees. Exclusion clauses are desired to prevent the indemnification of a wrongdoer. Armstrong v.Security Ins. Group, 292 Ala. 27, 288 So.2d 134 (1973). Gardner admitted that he accepted the kickbacks from his supervisor. We note that Gardner also admitted that he knew it was against the credit union's rules to take the kickbacks.
Gardner, as a credit union officer, violated established principal and agency law. Gardner received a personal profit to which he was not legally entitled, even though he was acquitted of the criminal charges.[1] The principal-agent relationship is fiduciary by nature and imposes a duty of loyalty, good faith, and fair dealing on the part of the agent. Naviera Despina,Inc. v. Cooper Shipping Co., 676 F. Supp. 1134 (S.D.Ala. 1987). "[An] agent may not [t]raffic with the subject-matter of his agency, without the consent of his principal, so as to reap the profit for himself." American Armed Services Underwriters, Inc.v. Atlas Ins. Co., 268 Ala. 637, 645, 108 So.2d 687 (1958) (citations omitted).
The summary judgment is due to be affirmed.
AFFIRMED.
HORNSBY, C.J., and MADDOX, SHORES and HOUSTON, JJ., concur.
[1] Gardner's supervisor and the owner of Beck's Mobile Homes were convicted in the kickback scheme.