Rel: October 24, 2025

**Notice:** This opinion is subject to formal revision before publication in the advance sheets of **Southern Reporter**. Readers are requested to notify the **Reporter of Decisions**, Alabama Appellate Courts, 300 Dexter Avenue, Montgomery, Alabama 36104-3741 ((334) 229-0650), of any typographical or other errors, in order that corrections may be made before the opinion is printed in **Southern Reporter**.

# SUPREME COURT OF ALABAMA

## OCTOBER TERM, 2025-2026

_____

### SC-2024-0492
_____

**Jeffrey Kolessar of BFAL Associates, LLC, as court-appointed receiver**

**v.**

**SJP Investment Partners, LLC, and Wells Fargo Bank, N.A., as trustee for the benefit of the holders of Benchmark 2019-B13 Mortgage Trust Commercial Mortgage Pass-Through Certificates, Series 2019-B13**

**Appeal from Jefferson Circuit Court
(CV-23-903546)**

MENDHEIM, Justice.[1]

_____

[1]This case was originally assigned to another Justice on this Court; it was reassigned to Justice Mendheim on September 17, 2025.

Jeffrey Kolessar, in his capacity as a court-appointed receiver appeals from an interlocutory order in the nature of an injunction that was entered against him by the Jefferson Circuit Court ("the circuit court") regarding relief requested by SJP Investment Partners, LLC ("SJP"), a Georgia limited-liability company. We reverse and remand.

SJP owns real and personal property operated as the Hotel Indigo on 20th Street South in Birmingham ("the Hotel").[2] In August 2019, SJP obtained a $10,710,000 loan ("the loan") from DBR Investments Co., Ltd., as is reflected in various loan documents ("the loan documents"). The loan subsequently was assigned to Wells Fargo Bank, N.A. ("Wells Fargo"), as trustee for the benefit of the holders of Benchmark 2019-B13 Mortgage Trust Commercial Mortgage Pass-Through Certificates, Series 2019-B13.

The loan was secured by a mortgage ("the mortgage") on the real property that was owned by SJP on 20th Street South, by an "Assignment of Leases and Rents" ("the assignment of leases and rents"), and by

---

[2]The Hotel Indigo is a franchise.

personal property used in the operation of the Hotel.[3]   The loan documents, as amended, also provided for the establishment and maintenance of reserve funds for the making of required repairs, parking acquisition, and other matters ("the reserve funds").[4] The reserve funds were to be disbursed to SJP upon the satisfaction of certain conditions but also were pledged, along with certain cash-management accounts in which revenue from the Hotel was deposited ("the cash-management accounts), as additional security for the loan.

In October 2023, Wells Fargo filed in the circuit court a verified complaint against SJP.  Attached to the complaint were numerous exhibits, including the mortgage, the assignment of leases and rents, and other allegedly pertinent loan documents.  Wells Fargo alleged that SJP had mismanaged the Hotel and had defaulted on SJP's loan obligations

---

[3]According to the loan documents, the sole member of SJP was BHM Capital Partners, LLC, whose members were two irrevocable trusts.  Monica Patel was the trustee of one of those trusts, and Sonial Patel was the trustee of the other trust.  Monica and Sonial, individually, were guarantors of the loan to SJP.  See Wells Fargo Bank, N.A. v. Patel, 24 Civ. 1162 (KPF) (S.D.N.Y.) (order dated Mar. 18, 2025).  In Patel, Wells Fargo is attempting to recover against Monica and Sonial for alleged breaches of their respective guaranty agreements.

[4]The loan documents had been amended after a default by SJP.

under the amended loan documents. Regarding the issue of mismanagement, Wells Fargo alleged that, as a result of SJP's actions, the Hotel was not generating sufficient revenue to pay both SJP's debt obligations to Wells Fargo and the operating expenses for the Hotel. Wells Fargo further alleged that SJP had threatened to close the Hotel; that Wells Fargo was not obligated to allow or make disbursements from the reserve funds or the cash-management accounts while a default existed under the loan documents; and that Wells Fargo was not willing to authorize disbursements for the Hotel's operating expenses unless a receiver was appointed.

Wells Fargo alleged that, based on SJP's purported default, "the full amount due under the Loan ha[d] been accelerated and [was] due and owing."[5] Wells Fargo requested an order "divest[ing] [SJP] of control of [the Hotel] and plac[ing] same under the management of a Receiver to manage and operate [the Hotel] and ensure the prompt payment of operating expenses." Also, Wells Fargo requested the entry of a "judgment entitling [Wells Fargo] to take and have all rents, revenues,

---

[5]Correspondence in the record on appeal supports the allegation that Wells Fargo had accelerated SJP's debt obligation under the loan.

income, issues and profits derived from [the Hotel] as well as all costs and fees to which it [was] entitled" under the loan documents and applicable law.

Two days after filing its verified complaint, Wells Fargo filed an emergency motion requesting the appointment of a receiver "pursuant to Ala. Code [1975,] § 6-6-620 and the common law of Alabama."[6]   The emergency motion was based on allegations substantially similar to those in Wells Fargo's verified complaint and adopted the verified complaint by reference.  Wells Fargo requested that Jeffrey Kolessar ("Kolessar"), of BFAL Associates, LLC, be appointed as receiver.

SJP filed an answer denying the material allegations of the complaint and a counterclaim against Wells Fargo, which included claims of breach of contract and fraud, among other claims.  SJP also filed an emergency motion requesting the entry of a temporary restraining order and a preliminary injunction against Wells Fargo or, in the alternative, the appointment of a special master.

_____

[6]The Alabama Uniform Commercial Real Estate Receivership Act, Ala. Code 1975, § 6-6-780 et seq., is inapplicable to the receivership in this case.  See Ala. Code 1975, § 6-6-807 (providing that that act "does not apply to a receivership for which the receiver was appointed before January 1, 2025").

The circuit court held a hearing on the respective emergency motions. On October 27, 2023, the circuit court entered an order that denied SJP's emergency motion and granted Wells Fargo's emergency motion. The October 2023 order stated that Wells Fargo had proven that a default existed under the loan documents and appointed Kolessar to serve as receiver for the Hotel, specifically referencing a section of the mortgage that provided that, while any event of default existed, Wells Fargo could "apply for the appointment of a receiver … of [the Hotel], without notice and without regard for the adequacy of the security for the Debt and without regard for the solvency of [SJP], [or] any guarantor or indemnitor with respect to the Loan."

The October 2023 order included, in pertinent part, the following factual determinations:

> "The Hotel's expenses each month to operate include the mortgage payment to Wells Fargo Bank, payroll, franchise fees, utilities, vendor expenses and other expenses. [SJP] claims that Three Hundred Forty-One Thousand Thirty-Six Dollars and Eighty-Nine Cents [$341,036.89] of Hotel Expenses are due and owing.
>
> "Most immediately, the Hotel's employees need payment of two [2] payrolls; the Hotel's Franchisor, IHG, is owed funds; Alabama Department of Revenue is owed sales taxes and lodging taxes; and the Hotel received a cut-off notice from Birmingham Water Works for its failure to pay. It is

6

undisputed that Wells Fargo Bank has refused to release any of the Lockbox funds[, the cash-management accounts from the Hotel's operations,] to pay any of these expenses."

The October 2023 order directed Kolessar

"to manage, operate and preserve all of the property, real, personal and mixed, associated with or related to the operation of [the Hotel] and to exercise all rights regarding management of [the Hotel] including but not limited to … [SJP's] rights to acquire additional collateral derived from [the loan documents] …, or any other rights of [SJP] related to operation of the Hotel, together with all the rents, revenues, income and profits from [the Hotel].

"… [Kolessar] shall immediately enter upon, receive and take complete possession and control of [the Hotel] and all documents, books, records, papers, accounts and other property relating thereto; … manage and operate [the Hotel]; … preserve and maintain [the Hotel]; … collect the rents and proceeds of [the Hotel] and all income and profits derived therefrom; … pay the mortgage payment to [Wells Fargo], payroll, franchise fees, utilities, vendor expenses and other expenses; … exercise all rights of [SJP] in and to [the Hotel], including, but not limited to adhering to contractual obligations of [SJP] or Court Orders; and … take all other actions of a receiver as set forth in the Loan Documents, as allowed by law, or as ordered by this Court."

The October 2023 order further stated

"that any individual or entity receiving a copy of this Order is hereby ENJOINED and RESTRAINED from discontinuing service to [Kolessar] or the Hotel based upon the nonpayment of such taxes, assessments, goods or services, and/or utilities provided prior to the date of this Order and from attempting to collect taxes, assessments, invoices and utility charges from [Kolessar] …  for any payment obligations whatsoever that

arose prior to the date of this Order.  Each utility company or entity providing service to the Hotel shall transfer any deposits which it holds to the exclusive control of [Kolessar] and shall be prohibited from demanding [Kolessar] deposit additional funds in advance to maintain or secure such service, or interrupt service due to pre-Receivership liabilities."

(Capitalization in original; emphasis added.)  The October 2023 order

continued:

"IT IS FURTHER ORDERED that money coming into the possession of [Kolessar] and not expended for any of the purposes authorized herein, shall be held by [Kolessar], subject to such Orders as this Court may hereafter issue.

"....

"IT IS FURTHER ORDERED that [SJP] shall cooperate with [Kolessar] in the performance of [his] obligations as RECEIVER and not interfere with or hinder, in any way whatsoever, [Kolessar] in the performance of [his] duties herein described and in the performance of any duties incident thereto."

(Capitalization in original.)

After the entry of the October 2023 order, Kolessar and SJP each

filed a contempt motion; Wells Fargo joined Kolessar's contempt motion.

Kolessar's contempt motion alleged that SJP had instructed certain

vendors "to file encumbrances against the Receivership Estate" and had

attempted to "impair [Kolessar's] ability to protect and administer the

8

Receivership Estate." SJP's contempt motion alleged, in part, that Kolessar had failed to pay expenses for the Hotel as required by the October 2023 order and, in pertinent part, requested that the October 2023 order be amended. Specifically, SJP requested that the October 2023 order be amended to "clarify that [Kolessar] must pay expenses incurred prior to the Receivership, and require [Kolessar] to provide [SJP] with access to all of the records and financial information regarding [the Hotel] upon [his] receipt and access of such information."

On March 14, 2024, the circuit court held a hearing on the contempt motions. Kolessar had independent counsel at the hearing and was treated as a party during that hearing. During the March 2024 hearing, the parties discussed, among other matters, issues regarding the submission of invoices to Kolessar and his closing on a pending parking-area acquisition. During the discussions, SJP's counsel alleged that Kolessar had not paid approximately $236,000 in accounts payable, but Kolessar's counsel noted that simply because Kolessar was in receipt of an invoice did not mean it should be paid and that "part of [Kolessar's] obligation in the business judgment world is to make sure that invoice is proper" and "working through that with the vendor." SJP's counsel then

9

stated that that SJP and Kolessar "ought to be able to work together to figure out a way … to make sure … no expense[s] are missed that impact the property," and Kolessar's counsel responded by stating that he already had requested from SJP "all documents, all invoices, [and] all accounts" and that SJP had been ordered by the circuit court to provide those to Kolessar. SJP's counsel responded, alleging that Kolessar had prevented SJP from accessing information about the operation of the Hotel and stating: "[L]et's have transparency on both sides. If we've got a problem, work it out amongst ourselves or come to Your Honor and say, 'We've got a problem and here's what it is. We need some help fixing it.'" Kolessar's counsel subsequently stated that, if SJP needed information, it should send a request list and that Kolessar would work with SJP's counsel, adding: "If we disagree …, then either [SJP's counsel] or [Kolessar] can bring that to the Court to be resolved."

Wells Fargo's counsel suggested that "there might be some benefit to our proposing an amendment to the [October 2023 order] that would clarify a few things," such as making the order "a little more detailed about what [Kolessar's] duties are versus what [SJP] should stay out of and, you know, things of that nature." The circuit court then stated:

10

"Well, we do have a Motion to Amend the Receivership Order, so it seems like both parties or all parties think that it should be amended. So if the parties can't work together, … this Court has no problem amending the order." The circuit court then admonished SJP's counsel to make sure that SJP was providing "notices of invoices and bills" to Kolessar and was not instructing vendors to file liens against the Hotel. The circuit court stated to Kolessar's counsel that

> "we need to make certain that the expenses of the hotel [are] taken care of. I know no one here wants this operation to fail. There's money out there to take care of the expenses, let's get them paid.
>
> "Let's get this parking lot situation behind us and so these people can get their hotel back and making money. So let's get this done as quickly as we can.
>
> "….
>
> "And so we want to make sure the expenses of the hotel [are] taken care of so that this hotel can continue to receive guests to stay in those rooms and continue to pay the employees that are working there."

The circuit court further stated that it could not determine what was "going on behind the scenes" as to the unpaid invoices, which included expenses incurred both before and after the entry of the October 2023 order, adding:

11

"I do agree that maybe the Order appointing [Kolessar] should be amended so that everyone is clear what each party's role is here. And so what the Court will do at this time in regards to a contempt order, this Court is not going to enter a contempt order at this time.

"The Court will allow the parties to get together in making amendments to the Order appointing [Kolessar], and once an amended order is entered, after that if there [is] any interference from any party or something that should be taking place that is not taking place regarding any parties, then the Court will take care of that at the appropriate time.

"....

" And I know [counsel for SJP], you filed a Motion for Order to Show Cause against [Kolessar] and [Wells Fargo] as well. And so again, at this time, the Court will not enter an order holding [Wells Fargo] or [Kolessar] in contempt; however, the Court will entertain this amended motion or amended order once that is received, and we will deal with that."

In wrapping up SJP's arguments at the March 2024 hearing, counsel for SJP then discussed the matters that it had requested the circuit court address and referenced the paragraph in SJP's contempt motion that had requested that Kolessar be ordered to pay all outstanding expenses of the Hotel, including pre-receivership claims, i.e., expenses incurred before the entry of the October 2023 order. After further discussion, the circuit court stated that SJP's requested matters would be addressed in its order and that

12

"it's already been addressed in regards to the expenses of the Hotel; that will be addressed. But again, as your Motion to Amend Receivership Order has counsel, opposing counsel has stated some amendments to the order is needed. So the Court will direct you all to meet and try and work together to amend the order however you see fit. And, [counsel for SJP], that's your opportunity at that time to address those concerns you have.

"Again, if you all cannot come to an agreement, you can file something with the Court and we will set it for a hearing and we'll address that."

Counsel for Kolessar thereafter expressed thanks to the circuit court for allowing the parties time to work on an amendment and noted that he was concerned about the part of SJP's request "where it says including expenses incurred prior to the Receivership order, … Your Honor, but we'll work with that with [counsel for SJP]." The circuit court then responded, "Okay."

On May 14, 2024, the circuit court entered an order regarding the parties' respective contempt motions. The circuit court specifically determined that SJP had instructed certain named vendors to file liens "due to non-payment of [their respective] invoices." The circuit court also determined that Kolessar had "received notice of … invoices and failed to pay said invoices and/or make arrangements to have said invoices paid." The circuit court did not find any party in contempt, but, as to Kolessar,

the May 2024 order stated that SJP's "motion" was granted in part and that, "[a]s directed in the [October 2023 order], [Kolessar] shall pay vendor expenses and other expenses of the Hotel, as well as adher[e] to contractual obligations of [SJP]." However, the May 2024 order also stated that SJP's "MOTION is hereby DENIED as to amending the Receivership Order." (Capitalization in original.)

On May 24, 2024, Wells Fargo filed a "Motion to Amend Order Appointing Receiver," referencing the circuit court's statements at the March 2024 hearing about entertaining amendments to the October 2023 order. Kolessar subsequently joined Wells Fargo's motion to amend. In the motion to amend, Wells Fargo alleged that the parties had conferred but had been unable to reach agreement about an amendment. Wells Fargo requested that the circuit court adopt a proposed amended order that Wells Fargo had attached to its motion. That proposed amended order included, in part, the following:

> "IT IS FURTHER ORDERED that notwithstanding anything to the contrary contained in this Order, neither [Kolessar] … nor the Receivership Estate … are or shall be liable for the payment of taxes of any kind, and/or any assessments, goods or services provided to [SJP] or [the Hotel], expenses incurred and/or utility charges prior to the appointment of [Kolessar]. It is within [Kolessar's] sole and absolute discretion to determine which expenses incurred

14

prior to the [Kolessar's] taking control of the Receivership Estate …, if any, were incurred in the normal and ordinary course of business and the payment of which is necessary and critical to the ongoing operation of [the Hotel] or Receivership Estate.

"….

"IT IS FURTHER ORDERED that, unless [SJP] and [Kolessar] otherwise agree in writing, [SJP] and any property management company engaged by [SJP] (as appropriate) will be solely and exclusively responsible for (a) any claims or liabilities that arose prior to the appointment of [Kolessar] that are in any way related to an employee's employment with or separation from [SJP] or any management company engaged by [SJP], including any compensation, benefits, accrued vacation, payroll taxes, workers compensation insurance, severance liabilities, contractual obligations, benefit plans, and (b) any other liabilities existing prior to the appointment of [Kolessar]."

(Capitalization in original.)

Also on May 24, 2024, Wells Fargo filed a "Motion for Clarification of Order," which Kolessar subsequently joined. That motion requested clarification of certain provisions of the May 2024 order, specifically that the circuit court clarify the May 2024 order by expressly stating that Kolessar was not required to pay

"expenses incurred by [SJP] prior to the appointment of [Kolessar]. Specifically, [Kolessar] has only two sources of funds with which to operate [the Hotel] that comprises the bulk of the Receivership Estate (1) current hotel revenues; and (2) advancements that [Wells Fargo] may provide in

15

[Wells Fargo's] discretion. The current hotel revenues are committed to the current expenses. Thus, to require [Kolessar] to fund expenses incurred by [SJP] prior to the creation of the Receivership, such as bills from unsecured service or supply vendors, would improperly elevate those unsecured creditors' priority to receive the profits (if any) from [the Hotel] over that of [Wells Fargo], which is a first-priority secured party and Mortgagee."

The motion further alleged that elevating the debts owed to such unsecured creditors was "contrary to the Mortgage, and inequitable."

On May 29, 2024, SJP filed a motion in opposition to Wells Fargo's motion to amend, and SJP proposed its own amendment, though SJP alleged that it was "content with" the May 2024 order. SJP proposed that the circuit court enter an amended order containing

"appropriate changes to meet the Court's concerns expressed at the hearing, including, for instance, requiring [Kolessar] to provide [SJP] with information about the operations and financing of [the Hotel], requiring [Kolessar] to do what it has already been ordered to do (close on the sale of the parking lot), and protect [the Hotel] for its ultimate return to SJP, its owner."

On June 6, 2024, SJP filed a motion to compel Kolessar "to pay the reasonable and normal expenses of [the Hotel] that [had been] incurred prior to the entry of [the October 2023 order]." SJP further alleged that Kolessar had mismanaged the Hotel, causing a significant reduction in revenue, and that such would continue "absent proper action." Attached

16

as an exhibit to SJP's motion to compel was an aging report (by claimants, dates, and amounts) identifying purported unpaid expenses that the Hotel had incurred both before and after Kolessar's appointment and that totaled $1,159,437.24.

Wells Fargo filed a response opposing SJP's motion to compel, referencing and incorporating its motion for clarification. Kolessar likewise filed a response opposing SJP's motion and adopted and incorporated the arguments made by Wells Fargo. Wells Fargo and Kolessar denied that Kolessar had mismanaged the Hotel. They contended that the Hotel revenues were insufficient to pay all Hotel expenses, that requiring payment of "all pre-receivership expenses would, in effect, require [Wells Fargo] to disburse funds to pay such expenses," and that any such payments would improperly prioritize the claims of unsecured creditors of SJP. In his response, Kolessar also argued that the issue whether the receivership estate should be used to pay pre-receivership claims was already before the circuit court in the parties' competing motions to amend the October 2023 order and the motion to clarify the May 2024 order. According to Kolessar,

> "[SJP] asks this Court for a financial 'get out of jail free' card, at the expense of the Receivership Estate and creditors to the

17

Receivership Estate and seeks to require [Kolessar] to significantly improve the Hotel [SJP] mismanaged for years. Indeed, in paragraph 4 and the referenced Exhibit A to the Motion to Compel, [SJP] is even so bold as to insist that the Receivership Estate shoulder over $256,000.00 in legal fees incurred by [SJP]."

Wells Fargo and Kolessar requested that the circuit court deny SJP's motion to compel and grant the motion to clarify the May 2024 order.

On July 21, 2024, the circuit court entered an "Order Clarifying the Court's May 14, 2024, Order." The July 2024 order stated:

"Upon review and consideration of [Wells Fargo's motion for clarification], the Court CLARIFIES as follows:

"….

"2. Paragraph No. 4 of the Court's Order of May 14, 2024[,] orders [Kolessar] to pay vendor expenses and other expenses of the Hotel, as well as adhering to contractual obligations of [SJP]. This includes payment of pre-receivership expenses of the Hotel, as this Court has directed the parties to confer on said expenses regarding the management and operation of the Hotel."

(Capitalization in original.)

Contemporaneously with the entry of the July 2024 order denying the relief that Kolessar and Wells Fargo had requested in their motion to clarify, the circuit court also entered an order denying SJP's June 2024 motion to compel the payment of the pre-receivership claims as "moot."

18

According to the case-action-summary sheet, the circuit court set the respective motions to amend for a hearing to be held on September 5, 2024.

On August 2, 2024, Kolessar filed in the circuit court a notice of appeal to this Court, naming both SJP and Wells Fargo as appellees,[7] and Kolessar filed a motion to reconsider the July 2024 order and a motion to stay. In support of those motions, Kolessar argued that the circuit court had erred by instructing him to pay the pre-receivership claims. According to Kolessar, the circuit court had issued that mandate "without concern for whether there [were] available funds to pay said expenses from the revenues of the Hotel." Kolessar also alleged that, if he was "immediately required to pay [the pre-receivership claims] …, which purportedly exceed $1,000,000, such a financial burden could do

---

[7]In its appellate brief, Wells Fargo agrees with Kolessar's argument that the July 2024 order is due to be reversed. Wells Fargo does not dispute that Kolessar "could choose to pay pre-receivership expenses (e.g., taxes and utilities) provided that funds exist to pay them, and provided that those expense are necessary to protect the Receivership Estate." Wells Fargo's brief at 10 n.5 (emphasis in original). "But," Wells Fargo notes, "the July 21 Order makes no such distinctions, instead apparently requiring [Kolessar] to pay any pre-receivership expense," including SJP's legal expenses unrelated to the preservation of the receivership estate. Id. (emphasis in original).

irreparable harm to the Hotel, [Kolessar], and [the Hotel's] creditors." On September 3, 2024, the circuit court entered an order granting Kolessar's motion to stay pending the disposition of his appeal.

We must first address the issue of the appealability of the July 2024 order. SJP has filed a motion to dismiss Kolessar's appeal. According to SJP, this Court lacks jurisdiction over the appeal because, it says, the May 2024 order was not an interlocutory injunction but, even if it was, the July 2024 order was an order clarifying the May 2024 order not modifying or amending that order, and, it therefore asserts, Kolessar's notice of appeal was thus untimely filed. According to Kolessar, however, the July 2024 order was an appealable order because, he says, it was an "interlocutory order granting, continuing, modifying, refusing, or dissolving an injunction, or refusing to dissolve or to modify an injunction." Rule 4(a)(1)(A), Ala. R. App. P.[8] Because the jurisdictional issue and the merits of Kolessar's argument that the circuit court erred in entering the July 2024 order are intertwined, some clarification

---

[8]Kolessar does not purport to be appealing from an order appointing or refusing to appoint a receiver. See Ala. Code 1975, § 12-22-9; Rule 4(a)(1)(B), Ala. R. App. P.

20

regarding the nature of that order will assist in our determination of those issues.

We first address whether the July 2024 order is an appealable interlocutory order. It is important to note that SJP is not in receivership. Only certain properties owned by SJP have been placed in receivership, namely the properties operated as the Hotel. Kolessar consistently has raised concerns about SJP's repeated attempts to have SJP's pre-receivership creditors (only some of which appear to have provided services relating to the operation of the Hotel) paid from the receivership estate, particularly in a manner that might adversely affect his ability to pay the Hotel's current operating expenses, including the mortgage obligations to Wells Fargo, which has vested rights in collateral held in the receivership estate. For practical purposes, this is important because it appears to be undisputed that it will be necessary for Kolessar to obtain additional disbursements from Wells Fargo, specifically from the reserve funds and the cash-management accounts, to maintain and repair the Hotel and eventually return it to the control of SJP, if possible.

According to submissions made by Wells Fargo in support of the appointment of Kolessar, during the period leading up to the

appointment of Kolessar, SJP had made unauthorized distributions to itself and related third parties from revenues of the Hotel, rather than paying certain of the Hotel's operating expenses. Although it does not appear that all the pre-receivership claims at issue were unpaid because of the alleged unauthorized distributions, those claims are nevertheless claims against SJP, not against the receivership estate, i.e., the Hotel, which is not a legal entity. Also, the pre-receivership claims do not appear to be expressly related to any lien regarding the properties composing the receivership estate. In other words, SJP has attempted to have unsecured pre-receivership claims against it paid through the receivership estate, and Kolessar has attempted to prevent the dilution of the receivership estate in a manner that would benefit SJP and its unsecured creditors at the expense of a secured creditor, Wells Fargo, as to the properties composing the receivership estate and to the detriment of Kolessar's ability to pay the Hotel's current operating expenses, including the Hotel's current debt obligations.

Kolessar argues in his appellate brief that the July 2024 order required him to pay all the pre-receivership claims SJP had requested that he pay, "without regard for the priority of creditors." SJP does not

disagree that Kolessar was ordered to pay all of those claims. And, in light of the circuit court's denial, as "moot," of SJP's motion to compel the payment of the pre-receivership claims, we must agree that Kolessar was ordered to pay all the pre-receivership claims.[9] The issue is when that order was entered. For the reasons hereinafter discussed, we conclude that the July 2024 order was the first order requiring Kolessar to take the specific action of paying the pre-receivership claims.

First, the October 2023 order did not require Kolessar to pay the pre-receivership claims. The October 2023 order "enjoined" SJP's pre-receivership creditors from "discontinuing service to [Kolessar] or the Hotel based upon the nonpayment of such taxes, assessments, goods or

---

[9]The circuit court's use of the term "moot" cannot be understood in the sense of there ceasing to be any controversy between the parties regarding whether the pre-receivership claims were to be paid because Kolessar and Wells Fargo continued to object to the payment of those claims. See Irwin v. Jefferson Cnty. Pers. Bd., 263 So. 3d 698, 703 (Ala. 2018) (discussing mootness in relation to the absence of a justiciable controversy); Black's Law Dictionary 1205 (12th ed. 2024) (defining "moot" as "3. (Of a putative legal dispute) no longer involving a real, live controversy."). Instead, the circuit court's use of the term "moot" only makes sense as reflecting its conclusion that the issue whether Kolessar must pay all the pre-receivership claims finally had been resolved in favor of SJP and against Kolessar and Wells Fargo. Black's Law Dictionary at 1205 (defining "moot" as "2. Having no practical significance; hypothetical or academic.").

services, and/or utilities provided prior to the date of [the October 2023 order]" and from "attempting to collect taxes, assessments, invoices and utility charges from [Kolessar] … for any payment obligations whatsoever that arose prior to the date of th[at] Order," while also directing Kolessar

> "to manage and operate [the Hotel]; to preserve and maintain [the Hotel]; to collect the rents and proceeds of [the Hotel] and all income and profits derived therefrom; to pay the mortgage payment to [Wells Fargo], payroll, franchise fees, utilities, vendor expenses and other expenses; [and] to exercise all rights of [SJP] in and to [the Hotel], including, but not limited to adhering to contractual obligations of [SJP] or Court Orders."

In light of the prohibition on SJP's pre-receivership creditors discontinuing services for nonpayment of their pre-receivership claims and from attempting to collect from Kolessar on those claims, and in light of the purpose of the receivership, which was to maintain the status quo pending resolution of the claims of SJP and Wells Fargo, reading the broad directives to Kolessar as requiring him to pay the pre-receivership claims is not a reasonable reading of the October 2023 order, particularly in light of the insufficient revenue being generated by the Hotel's operations.

24

Second, the May 2024 order did not require Kolessar to pay the pre-receivership claims. The May 2024 order stated that, "[a]s directed in the [October 2023 order], [Kolessar] shall pay vendor expenses and other expenses of the Hotel, as well as adher[e] to contractual obligations of [SJP]." (Emphasis added.) Clearly that language did not alter the pertinent language in the October 2023 order in the least. Also, the discussions during the March 2024 hearing further support the conclusion that the May 2024 order was not intended to require Kolessar to pay the pre-receivership claims. The parties agreed that after that hearing they were to discuss proposed amendments to the October 2023 order, and, in the May 2024 order, the circuit court expressly denied SJP's motion to amend the October 2023 order.

As discussed above, after the March 2024 hearing, SJP and Wells Fargo disagreed about how to amend the October 2023 order, and, thereafter, Kolessar and Wells Fargo requested an order prohibiting the payment of the pre-receivership claims, except at the discretion of Kolessar, which the circuit court effectively denied when it entered the July 2024 order. In other words, instead of granting the requested prohibition on paying pre-receivership claims from the receivership

estate, at least pending consideration of the respective motions to amend, the circuit court did the opposite, modifying Kolessar's legal obligations as receiver by requiring him, for the first time, to pay all the pre-receivership claims from the receivership estate, without condition.

Having resolved when Kolessar was first ordered to pay the pre-receivership claims, all that remains regarding the question of the appealability of the July 2024 order is to determine whether it reflects an injunction for purposes of Rule 4(a)(1)(A). SJP attempts to buttress its argument that the July 2024 order does not reflect an injunction by noting that it had not requested an injunction pursuant to Rule 65, Ala. R. Civ. P.[10] However, SJP's argument confuses the issue whether an

---

[10]It is clear from the record that the circuit court did not require SJP to comply with the requirements of Rule 65. In part, Rule 65 would have required SJP to present evidence establishing

> "'that (1) [SJP] would suffer irreparable harm without the injunction, (2) [SJP] has no adequate remedy at law, (3) [SJP] has at least a reasonable chance of success on the ultimate merits of the case, and (4) the hardship that the injunction will impose on [the receivership estate] will not unreasonably outweigh the benefit accruing to [SJP].'"

Ex parte Alabama Dep't of Youth Servs., 401 So. 3d 276, 286 (Ala. 2024) (quoting City of Helena v. Pelham Bd. of Educ., 375 So. 3d 750, 752 (Ala. 2022)). See also Rule 65(d)(2) (stating that "[e]very order granting an injunction shall set forth the reasons for its issuance; shall be specific in

injunction satisfies the requirements of Rule 65 with the issue whether an order is considered an "injunction" under our precedents discussing the application of Rule 4(a)(1)(A).

In Kappa Sigma Fraternity v. Price-Williams, 40 So. 3d 683 (Ala. 2009), this court concluded that an interlocutory order addressing the final substantive relief at issue in an action and requiring payment before a final judgment had been entered was an appealable order "injunctive in nature" for purposes of Rule 4(a)(1)(A). Compare Rule 4(a)(1)(A) with 28 U.S.C. § 1292(a)(1) (authorizing appeals from "[i]nterlocutory orders of the district courts … granting, continuing, modifying, refusing or dissolving injunctions, or refusing to dissolve or modify injunctions, except where a direct review may be had in the Supreme Court"). See generally 16 Charles Alan Wright et al., Federal Practice & Procedure: Jurisdiction & Related Matters § 3922 (3d ed. 2012) ("If an affirmative definition of a § 1292(a)(1) 'injunction' must be attempted, it would embrace orders that are directed to a party, enforceable by contempt, and designed to accord or protect 'some or all of the substantive relief sought

terms; shall describe in reasonable detail, and not by reference to the complaint or other document, the act or acts sought to be [enjoined]").

27

by a complaint' in more than temporary fashion."). We stated in <u>Kappa Sigma Fraternity</u>:

> "Rule 4(a)(1)(A), Ala. R. App. P., expressly contemplates appeals from orders 'granting, continuing, modifying, refusing, or dissolving an injunction, or refusing to dissolve or to modify an injunction.' 'An injunction is defined as "[a] court order commanding or preventing an action." <u>Black's Law Dictionary</u> 788 (7th ed.1999).' <u>Dawkins v. Walker</u>, 794 So. 2d 333, 335 (Ala. 2001). The trial court's March 6, 2009, order commanded the chapter to take specific action -- to pay the settlement proceeds to Price-Williams by March 9, 2009. Because the March 6, 2009, order commands the chapter to take action, we conclude that it is injunctive in nature. See <u>Dawkins</u>, 794 So. 2d at 335. 'An appeal may be taken from "any interlocutory order granting, continuing, modifying, refusing, or dissolving an injunction, or refusing to dissolve or to modify an injunction." Rule 4(a)(1)(A), Ala. R. App. P.' <u>Watson v. Watson</u>, 910 So. 2d 765, 768 (Ala. 2005)."

40 So. 3d at 689-90; see also <u>Lem Harris Rainwater Fam. Tr. v. Rainwater</u>, 344 So. 3d 331, 335 (Ala. 2021) (stating that the payment "order was injunctive in nature -- because it commanded the parties to take specific action" in relation to the substantive relief at issue); <u>Bates v. Stewart</u>, 99 So. 3d 837, 851 (Ala. 2012) (citing Rule 4(a)(1)(A) and stating: "The trial court's August 22 and September 9 orders commanded the trustee of the Abernathy trust to take specific action -- to stop making certain payments contemplated by the trust and to release certain information. Because the August 22 and September 9 orders clearly

command the trustee to take action, we conclude that it is injunctive in nature."); cf. City of Orange Beach v. Lamar Cos., 403 So. 3d 832, 839-40 (Ala. 2024) (applying Rule 4(a)(1)(A) when "[t]he circuit court's … order denying Orange Beach's motion to enforce the consent decrees constituted a refusal to require Lamar to remove Billboard C from the beach highway, i.e., refusing to require Lamar to take a specific action").

For purposes of Rule 4(a)(1)(A), the issue is not whether the July 2024 order complied with Rule 65 but whether the order is injunctive in nature, as discussed in the above-referenced precedents. The fact that no injunction pursuant to Rule 65 was requested is not determinative of that issue. And, considering the discussion above regarding the circumstances under which the July 2024 order was entered and the language used in that order in relation to previous orders, that order is injunctive in nature as to Kolessar for purposes of Rule 4(a)(1)(A) and is not a mere clarification of the October 2023 order or May 2024 order. See Southland Quality Homes, Inc. v. Williams, 781 So. 2d 949, 952 (Ala. 2000) ("[T]his Court looks to the substance of a motion or order, rather than its form."); cf. Securities & Exch. Comm'n v. Credit Bancorp., Ltd., 297 F.3d 127, 136 (2d Cir. 2002) (stating that an order authorizing an

29

interim plan for partial distributions by a receiver and that implicated creditor priorities was appealable because it modified a preliminary injunction that had frozen Bancorp's assets). Accordingly, SJP's motion to dismiss is due to be denied, and, contemporaneously with the release of this opinion, the Court has issued an order denying the motion.

As for Kolessar's arguments that the July 2024 order should be reversed, we see no need to go beyond his argument that the circuit court exceeded its discretion by requiring him to pay the pre-receivership claims without regard to the priority of creditors. Based on Kolessar's appointment as receiver, we must conclude that Wells Fargo already had established "a reasonable probability of success on the [merits regarding its complaint], and that the subject-matter in controversy [i.e., the Hotel] [was] in danger." Ashurst v. Lehman, Durr & Co., 86 Ala. 370, 371, 5 So. 731, 731 (1889). And it is well settled that a receivership

> "is preventive in its nature, and its purpose is the preservation of the subject-matter of litigation, for the benefit of all the parties in interest, until their rights can be finally adjudicated. It does not affect the title, nor establish the rights of the parties. Such being the nature of the remedy, the appointment of a receiver is authorized, when the party seeking the appointment shows, prima facie, a title reasonably free from doubt, or a lien upon the subject-matter of controversy, to which he has a right to resort for the satisfaction of his claim, and that it is in danger of loss from

30

> waste, misconduct, or insolvency, if the defendant is permitted to retain the possession."

Id.; see also C.E. Dev. Co. v. Kitchens, 288 Ala. 660, 666-67, 264 So. 2d 510, 516 (1972) ("'"The remedy [of receivership] is preventive in its nature, and its purpose is the preservation of the subject-matter of litigation, for the benefit of all the parties in interest, until their rights can be finally adjudicated."'" (citations omitted)). Requiring Kolessar to pay the pre-receivership claims against SJP from the receivership estate, unconditionally, does not protect the receivership estate from danger of loss, particularly to the extent that such payments might affect Kolessar's ability to pay the current operating expenses of the Hotel or might adversely affect the security interests of Wells Fargo without its consent. See 65 Am. Jur. 2d Receivers § 72 (2021) ("The appointment of a receiver does not alter, affect, determine, or destroy any prior vested right, encumbrance, or lien, nor affect the order of existing liens. Courts do not have the power, in receivership proceedings, to take away vested lien rights without the consent of the lien holders.").

As this Court stated in Bridgeport Electric & Ice Co. v. Bridgeport Land & Improvement Co., 104 Ala. 276, 281-82, 16 So. 93, 93 (1894):

31

"The very purpose of placing the property in the hands of a receiver was to have it held and protected for the benefit of creditors. The bill was filed for the benefit of all creditors who might come in and contribute to the litigation. The priority of creditors, if there were any, could be ascertained and determined, and their priorities protected. The effect of the order of the court was to permit one who claimed to be a judgment creditor, by levy of execution, to take from the receiver all the assets, and appropriate them, if necessary, to the payment of the one claim, to the exclusion of the complainant's demand; and that upon a judgment recovered subsequent to the filing of complainant's bill and the appointment of a receiver, without a reference to the register, or without giving complainant or any other creditor an opportunity to show, if they could, any defense to the judgment, or that it had no priority over other claims. To permit this order of the court to be executed would give the petitioner an advantage not warranted by any evidence in the record, and, if the averments of the bill be true, complainant and other creditors would sustain irremediable loss."

The principles discussed in <u>Bridgeport Electric & Ice Co.</u> are instructive in the present case, and we see no reason to draw a distinction between the attempt to obtain payment made by the judgment creditor at issue in that case and SJP's attempt to require Kolessar to discharge its pre-receivership obligations from the receivership estate, particularly in the absence of evidence establishing that payment of each of the pre-receivership claims was required for the Hotel to continue operating, that making such payments would not adversely affect Kolessar's continuing operation of the Hotel, and that making such payments would not

adversely affect the interests of priority creditors, such as Wells Fargo, without the consent of such creditors.

Based on the foregoing, the July 2024 order is reversed and the case is remanded to the circuit court for further proceedings consistent with this opinion.

REVERSED AND REMANDED.

Shaw, Wise, and Sellers, JJ., and Minor, Special Justice,* concur.

Bryan, J., concurs in the result.

Stewart, C.J., and McCool and Lewis, JJ., dissent.

Cook, J., recuses himself.

---

*Judge Richard J. Minor of the Alabama Court of Criminal Appeals was appointed to serve as a Special Justice in regard to this appeal.